UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TIMOTHY EVANS,

       Plaintiff,

v.                  5:05-CV-0515
                     (GHL)
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.
_____

APPEARANCES:               OF COUNSEL:

MCMAHON, KUBLICK & SMITH, P.C.      JENNIFER GALE SMITH, ESQ.
Counsel for Plaintiff
500 South Salina Street
Syracuse, New York 13202

HON. GLENN T. SUDDABY          WILLIAM H. PEASE, ESQ.
United States Attorney for the         Assistant United States Attorney
 Northern District of New York
Counsel for Defendant
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York 13261-7198

GEORGE H. LOWE, United States Magistrate Judge

## MEMORANDUM DECISION AND ORDER[1]

**I. BACKGROUND**

  **A. Procedural History**

  Plaintiff filed an application for disability insurance benefits on February 11, 2004.

(Administrative Transcript ("T") at 28.) The application was denied and Plaintiff requested a

hearing before an Administrative Law Judge ("ALJ") which was held on October 21, 2004. (T.

---

  [1] This matter is before the Court by consent of both parties. (Dkt. No. 12.)

at 187-204.) On February 23, 2005, the ALJ issued a decision finding that Plaintiff was not disabled. (T. at 11-19.)

Plaintiff appealed to the Appeals Council, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on March 24, 2005. (T. at 5-7.) Plaintiff commenced this action on April 27, 2005. (Dkt. No. 1.)

**B.     The Contentions**

Plaintiff makes the following claims:

(1)     The ALJ erred in failing to give controlling weight to the opinions of Francis J. Durgin, M.D., Plaintiff's treating physician. (Dkt. No. 6 at 6-8.)

(2)     The ALJ erred in failing to consider Social Security Ruling ("SSR") 85-15. (Dkt. No. 6 at 9.)

(3)     The ALJ erroneously relied on the report of Jeanne A. Shapiro, Ph.D., who only examined Plaintiff once, in conjunction with a psychiatric examination. (Dkt. No. 6 at 10.)

(4)     The ALJ improperly evaluated Plaintiff's mental illness. (Dkt. No. 6 at 11.)

Defendant contends that the ALJ's decision is supported by substantial evidence and thus should be affirmed. Dkt. No. 9.

**II.     APPLICABLE LAW**

**A.     Standard for Benefits**

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2004). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the Social Security Administration ("SSA") has promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520 (2005). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R. §§] 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.[] If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national

3

>economy.[] [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003). If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy. *Id.* (citing *Barnhart v. Thomas*, 540 U.S. at 25; other citations omitted).

**B.     Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003); *Serrano v. Barnhart*, 2003 WL 22683342, at *10; *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42

U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**III.   THE PLAINTIFF**

Plaintiff was born on January 1, 1956. (T. at 48.) He obtained a bachelor's degree in criminal justice (T. at 192) and previously worked as a caseworker for the Department of Social Services. Plaintiff also had experience in sales and was working part-time as a salesman at the time of the hearing.[2] (T. at 192-193.) Plaintiff alleges disability due to depression.[3] (Dkt. No. 6

---

[2]   The ALJ found that this part-time work did not constitute substantial gainful activity. (T. at 13.)

[3]   In his application (which is not part of the Administrative Transcript), Plaintiff alleged disability due to depression, hypertension, diabetes, and sleep apnea. The ALJ found that Plaintiff's depression was severe, but that his diabetes, hypertension, and sleep apnea were not severe impairments. Plaintiff does not challenge this finding. (Dkt. No. 6, Dkt. No. 9 at 10 n.7.)

5

at 1-2.)

## IV. THE ALJ'S DECISION

The ALJ found that: (1) Plaintiff had not engaged in substantial gainful activity since January 8, 2004 (T. at 18); (2) Plaintiff's depression was severe but did not meet or medically equal one of the listed impairments in Appendix 1 to Subpart P of Part 404 (*Id.*); (3) Plaintiff's allegations were partially credible (*Id.*); (4) Plaintiff retained the residual functional capacity ("RFC") to perform work requiring the ability to understand, remember or carry out simple instructions and perform simple tasks with few or infrequent changes in job routine (T. at 19); (5) using section 204.00 of the Medical-Vocational Guidelines (the "Grid") as a framework, Plaintiff was not disabled (*Id.*).

## V. DISCUSSION

### A. Did the ALJ Err in Declining to Give Dr. Durgin's Opinions Controlling Weight?

Plaintiff contends that the ALJ should have given the opinions of Francis J. Durgin, M.D., Plaintiff's treating physician, controlling weight because his opinions were not contradicted by substantial evidence. (Dkt. No. 6 at 7-8.) In so holding, Plaintiff argues that the ALJ substituted his own opinion for the "competent medical evidence of Dr. Durgin." (Dkt. No. 6 at 10.) Defendant responds that the ALJ properly afforded little weight to Dr. Durgin's opinions. (Dkt. No. 9 at 14-16.)

The medical opinions of a treating physician[4] are given "controlling weight" as long as

---

[4] "Treating source" is defined as one's own physician, psychologist, or other acceptable medical source who provides medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the patient/plaintiff/claimant. 20 C.F.R. § 404.1502 (2006).

6

they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with other substantial evidence contained in the record. 20 C.F.R. § 404.1527(d)(2) (2006). In *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004), the Second Circuit provided the following guidance:

> [T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (treating physician's opinion is not controlling when contradicted "by other substantial evidence in the record"); 20 C.F.R. § 404.1527(d)(2). Here, the key medical opinions submitted by Dr. Elliott to the ALJ were not particularly informative and were not consistent with those of several other medical experts. Thus, Dr. Elliot's opinion as the treating physician does not sustain controlling weight.

*Halloran v. Barnhart*, 362 F.3d at 32.

However, "[a]n ALJ who refuses to give controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Id.* These factors include: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2) (2006). The Regulations further state that "good reasons" will be given for the weight afforded to the treating source's opinion. *Id.*

In the instant case, the ALJ properly did not afford Dr. Durgin's opinions controlling weight because his opinions were inconsistent with substantial evidence in the record. In addition, the ALJ discussed the factors set forth in 20 C.F.R. § 404.1527(d)(2). Accordingly, the

ALJ's decision is affirmed.

Plaintiff points to Dr. Durgin's opinions as set forth in a Medical Source Statement[5] of Ability to Do Work-Related Activities (Mental) dated February 6, 2004.  (T. at 106-107.)  Specifically, Plaintiff highlights the portion of the Statement where Dr. Durgin indicated that Plaintiff had (1) a "moderate" restriction in his ability to understand and remember short, simple instructions; (2) a "marked" restriction in his ability to carry out short, simple instructions, interact appropriately with the public and respond appropriately to work pressures in a usual work setting; and (3) an "extreme" restriction in his ability to understand and remember detailed instructions, carry out detailed instructions, make judgments on simple work-related decisions, interact appropriately with supervisor(s) and co-workers, and respond appropriately to changes in a routine work setting.  (*Id.*)  Furthermore, in a letter dated March 9, 2004, Dr. Durgin wrote that Plaintiff was "presently completely disabled."  (T. at 105.)

These opinions, which are quite restrictive, are not supported by Dr. Durgin's own contemporaneous notes from Plaintiff's office visits, nor are the opinions supported by other evidence contained in the record.  For example, in the period leading up to March 9, 2004, Plaintiff was seen by Dr. Durgin nine times, on a weekly basis, including a visit on March 9, 2004.  (T. at 134.)  Dr. Durgin's treatment notes include statements made by Plaintiff which

---

[5]   A "medical source statement" is a medical opinion submitted by an acceptable medical source about what an individual can still do despite a severe impairment(s), in particular about that individual's physical or mental abilities to perform work-related activities on a sustained basis.  SSR 96-5p.  "Medical source statements are to be based on the medical sources' records and examination of the individual; i.e., their personal knowledge of the individual.  Therefore, because there will frequently be medical and other evidence in the case record that will not be known to a particular medical source, a medical source statement may provide an incomplete picture of the individual's abilities."  *Id*.

contradict the restrictive limitations set forth by Dr. Durgin and his opinion that Plaintiff was "completely disabled." Dr. Durgin's notes include statements, by Plaintiff, including: "I feel a lot better today" (January 12, 2004), "[n]o suicidal thoughts" (January 12, 2004), "I'm getting stronger each day" (January 19, 2004), "[e]ager to get back to work" (February 6, 2004),[6] "[s]ending out resumes . . . looking for sale [sic] position" (February 27, 2004, ellipsis in original), "[n]o thoughts of self-harm" (February 27, 2004), "[o]ptimistic" (February 27, 2004), "[d]oing well" (March 9, 2004), and "[r]estless with job search" (March 9, 2004). (T. at 134.) There are no notes during this time period which would support the strict constraints specified by Dr. Durgin or his opinion that Plaintiff was totally disabled. Plaintiff's own statements and Dr. Durgin's notes belie the restrictions set forth in the February 6, 2004 Medical Source Statement of Ability to Do Work-Related Activities (Mental).

      In addition, Dr. Durgin's opinion regarding Plaintiff's limitations is not supported by other evidence in the record. For example, the medical source statement of Jeanne A. Shapiro, Ph.D., who conducted a psychiatric examination of Plaintiff on March 22, 2004, stated that "[r]esults of the examination do not appear to be consistent with any psychiatric problems that would significantly interfere with the claimant's ability to function on a daily basis. Any symptoms he is experiencing at the present time appear to be mild in nature." (T. at 111.) Furthermore, Dr. Shapiro opined that "[v]ocationally, the claimant appears to be capable of following, understanding, and remembering simple instructions and directions. He appears to be capable of performing simple and complex tasks with supervision and independently. He appears to be

---

[6] Notably, this is the same date Dr. Durgin completed the Medical Source Statement of Ability to Do Work-Related Activities (Mental).

capable of maintaining attention and concentration for tasks and regularly attending to a routine and maintaining a schedule. He appears to be capable of making appropriate decisions. He appears to be capable of learning new tasks. He appears to be able to relate to and interact appropriately with others. He may have difficulty adequately dealing with stress." (*Id.*) Dr. Shapiro's opinion is in direct contrast with Dr. Durgin's opinion regarding Plaintiff's ability to perform work related tasks.

While the Court acknowledges that Dr. Shapiro only examined Plaintiff on one occasion, her opinions support Dr. Durgin's treatment notes, which evidence Plaintiff feeling better and actively searching for work. The opinions of Dr. Shapiro and the treatment notes of Dr. Durgin contradict Dr. Durgin's conclusory opinion that Plaintiff was "presently completely disabled" and the strict restrictions set forth in the Medical Source Statement of Ability to Do Work-Related Activities (Mental). Simply stated, there is no evidence contained in the record, including Dr. Durgin's own treatment notes, that support the restrictions he specified.

In addition, as required when the ALJ does not give controlling weight to a treating physician, the ALJ discussed the factors under 20 C.F.R. § 404.1527(d)(2). For example, he mentioned that Plaintiff saw Dr. Durgin, a psychiatrist, on a weekly basis from January of 2004 through September of 2004. (T. at 15.) Furthermore, the ALJ noted that the medical evidence, namely Dr. Durgin's own psychotherapy notes and the other evidence of record, did not support Dr. Durgin's opinion that Plaintiff was "totally disabled." (*Id.*)

Accordingly, affirmance is appropriate.

**B.     Did the ALJ Properly Rely on the Grid?**

Plaintiff also contends that because the ALJ properly found that Plaintiff could not

perform his past relevant work as a caseworker, the burden then shifted to the Defendant to show that there were a significant number of jobs in the national economy that Plaintiff could perform, based upon his RFC, education, and prior vocational experience.[7] (Dkt. No. 6 at 10.) Defendant responds that the ALJ applied the proper legal standards and his decision is supported by substantial evidence. (Dkt. No. 9 at 16-17.)

In the ordinary case, the Commissioner meets his burden at the fifth step of the evaluation process by consulting the Grid. *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986). "Although the grid results are generally dispositive, exclusive reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations." *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999). Particularly, "if a claimant's nonexertional impairments 'significantly limit the range of work permitted by his exertional limitations' then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments . . . . Accordingly, where the claimant's work capacity is significantly diminished beyond that caused by his exertional impairment the application of the grids is inappropriate." *Bapp*, 802 F.2d at 605-06. "In these circumstances, the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.'" *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

---

[7]     Even though this one paragraph argument is tucked away in the middle of Plaintiff's treating physician argument, and is very conclusorily discussed, the Court will nonetheless address the argument. (Dkt. No. 6 at 10.) Furthermore, references to the need for a vocational expert appear throughout Plaintiff's brief. As is set forth in this section of the instant Memorandum Decision and Order, the application and use of the Grid as a framework was proper and thus no vocational expert was necessary.

The ALJ properly noted that the Grid is not strictly applied, if at all, when a claimant has nonexertional limitation(s), as in the case before him. (T. at 18.) Hence, the ALJ inquired as to whether Plaintiff's nonexertional limitation, e.g., his mental impairment, significantly compromised his ability to work. (*Id.*) The ALJ found that "[b]ased on a thorough review of the overall record . . . the undersigned concludes that the claimant's ability to perform work at all exertional levels is not significantly compromised by his non-exertional limitations." (*Id.*) The ALJ then used the Grid as a framework, applied section 204.00, and found that Plaintiff was not disabled. (T. at 19.)

The ALJ's finding is supported by substantial evidence. Plaintiff did not challenge any of the ALJ's findings with regard to his physical impairments, and since the ALJ found that Plaintiff did not have any severe physical impairments, he found that Plaintiff could perform work at all exertional levels. This was not disputed by Plaintiff; however, he does dispute the ALJ's finding that Plaintiff's nonexertional limitation did not significantly impact his ability to perform work.

As stated above, Plaintiff's own statements and Dr. Durgin's treatment notes do not support the contention that Plaintiff's depression significantly impacts his ability to perform work. In fact, Plaintiff's own statements and Dr. Durgin's treatment notes evidence the opposite. Plaintiff told Dr. Durgin he was "[e]ager to get back to work" and was "[s]ending out resumes" and "looking for sale [sic] position." (T. at 134.) Additionally, as detailed above, the opinions of Dr. Shapiro support the ALJ's finding.

Accordingly, there is substantial evidence to support the ALJ's finding and affirmance is appropriate.

### C. Did the ALJ Consider SSR 85-15?

Plaintiff argues that because his mental limitations constitute a significant impairment, SSR 85-15 is relevant and the ALJ erred in failing to consider it.[8] (Dkt. No. 6 at 9.) Defendant contends that the ALJ found that Plaintiff was able to meet the mental demands of unskilled work and specifically found that his ability to work was not significantly compromised by his mental impairment. (Dkt. No. 9 at 11-14.)

Plaintiff accurately quotes a portion of SSR 85-15, which states:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

SSR 85-15. It is important to note that in order to justify a finding of disability, a claimant must have a substantial loss of the ability to meet the basic mental demands of unskilled work. *Id.* In this case, the ALJ specifically found that Plaintiff retained the capacity "to perform work requiring the ability to understand, remember or carry out simple instructions and perform simple tasks with few or infrequent changes in job routine." (T. at 17.) The ALJ also found that Plaintiff's "ability to perform work at all exertional levels is not significantly compromised by his non-exertional limitations." (T. at 18.) Because the ALJ so found, the portion of SSR 85-15

---

[8] Plaintiff's brief on this point consists of a block quotation and three conclusory statements that do not clearly set forth his argument. It is unclear exactly what point Plaintiff is trying to make.

quoted by Plaintiff is not applicable. Thus to the extent Plaintiff is arguing that the ALJ erred in "not consider[ing] SSR 85-15," this argument is unavailing.

To the extent that Plaintiff's argument could be interpreted to contend that the ALJ erred in finding that Plaintiff retained the capacity to perform work at all levels of physical exertion and that his nonexertional impairment did not significantly compromise his ability to do so, this argument also fails because the ALJ's finding is supported by substantial evidence, as is discussed above.

### D.     Does Dr. Shapiro's Report Constitute Substantial Evidence?

Plaintiff argues that "the report of Dr. Shapiro does not constitute substantial evidence" because Dr. Shapiro only saw Plaintiff once, did not perform a mental status exam, and did not review or discuss Plaintiff's psychological treatment history. (Dkt. No. 6 at 10.) Defendant does not respond directly to this argument, but incorporates Dr. Shapiro's conclusions and findings throughout his brief, thus it is presumed that the Defendant argues that the ALJ properly relied upon Dr. Shapiro's report. (Dkt. No. 9.) The ALJ discussed Dr. Shapiro's consultative evaluation and afforded it more weight than the assessment of the nonexamining Agency physician. (T. at 17.)

Plaintiff argues that Dr. Shapiro's conclusions and findings are not substantial evidence that support the ALJ's decision because Dr. Shapiro "saw the plaintiff only once and did not perform a mental status exam. Moreover, Dr. Shapiro did not review the extensive psychological treatment that the plaintiff has undergone in the past. Finally, Dr. Shapiro's report is devoid of any mention of the claimant's aberrant though [sic] process and the diagnosis of bipolar disorder." (Dkt. No. 6 at 10.)

First, the Court notes that Plaintiff's brief contains no citations to relevant case authority, statutes, regulations, or rulings that would support his position that the ALJ was not entitled to rely upon Dr. Shapiro's opinion because she only saw him once, did not review Plaintiff's psychological history, and did not mention his aberrant thought process and bipolar disorder. Putting this aside, Plaintiff's argument completely fails on this point because Dr. Shapiro's March 22, 2004 report regarding Plaintiff's psychiatric examination clearly states that Dr. Shapiro conducted a mental status examination and she detailed the results of that examination in her report. (T. at 110.)

Secondly, it is entirely possible, and is likely a certainty, that Dr. Shaprio's report did not mention Plaintiff's aberrant thought process and bipolar disorder because she did not find that Plaintiff had these symptoms and/or disorders. This is evident from Dr. Shapiro's report, which contained her statements that his thought process was coherent and goal directed and that there was no evidence of delusions, hallucinations, or disordered thinking. (T. at 110.)

Finally, even though Dr. Shapiro only saw Plaintiff once, the ALJ was entitled to rely on her opinions because she is an acceptable medical source. 20 C.F.R. §§ 404.1502, 404.1527 (2006). Furthermore, Dr. Shapiro reviewed Plaintiff's psychiatric history as evidenced by her report, which stated that he had no history of psychiatric hospitalizations and was in treatment with Dr. Durgin and had been treated by numerous doctors. (T. at 108.)

Overall, there is no record evidence to support Plaintiff's argument and, in fact, the record evidence points to the contrary. Accordingly, affirmance is appropriate.

### E.     Did the ALJ Properly Consider Plaintiff's Depression?

Plaintiff's fourth point seemingly disputes the ALJ's finding that his allegations regarding

his impairment and its impact on his ability to work are partially credible.  (Dkt. No. 6 at 11.)  Although not explicitly stated, Plaintiff is presumed to argue that if the ALJ had found his allegations fully credible, his mental impairment would be found to have an impact on his ability to perform work and/or his RFC.  (*Id.*)   Defendant argues that the ALJ's finding is supported by substantial evidence and should be affirmed.  (Dkt. No. 9 at 11-14.)

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)).  To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record.  20 C.F.R. § 404.1529 (2006); *see also Foster v. Callahan*, Civ. No. 96-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998) and SSR 96-7p.  First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment(s) which could reasonably be expected to produce the claimant's pain or other symptoms.  SSR 96-7p.  This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms.  *Id.*  If no impairment is found which could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities.  An individual's statements about his pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled.  *Id.*

However, once an underlying physical or mental impairment(s) which could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to evaluate the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities.  *Id.*  Whenever a claimant's statements about the intensity, persistence, or limiting effects of the claimant's pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the claimant's credibility.  *Id.*  A claimant's symptoms will be determined to diminish his/her capacity for basic work activities to the extent that his/her alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record.  *Id.*

A claimant's symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone.  *Id.*  When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors:  (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. § 404.1529(c)(3) (2006).

An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is

supported by substantial evidence. *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 U.S. Dist. LEXIS 6988, at *29-*30 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999) and *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.")).

Plaintiff's depression and its resulting symptoms were clearly documented in the record. Thus, the first step of the two-step analysis is met because Plaintiff had a medically determinable mental impairment that could reasonably be expected to produce Plaintiff's symptoms. Turning to step two, the ALJ then had to evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limited his ability to perform basic work activities. Because Plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms were not substantiated by objective medical evidence,[9] the ALJ had to make a finding as to Plaintiff's credibility using, among other things, the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), (4). In other words, because the objective medical evidence did not substantiate Plaintiff's claim that his depression was so severe that he could not perform any work activities, the ALJ had to assess Plaintiff's credibility.

In assessing Plaintiff's credibility, the ALJ reviewed and discussed the factors set forth in 20 C.F.R. § 404.1529(c)(3) including: Plaintiff's daily activities, his symptoms and their

---

[9] As stated above, Plaintiff's depression, by his own admissions, was improving and he had been actively searching for work. This does not support Plaintiff's allegations that his symptoms were so severe that he should be found to be disabled and thus not able to perform any work activities.

frequency, the medication Plaintiff took, the treatment he received, and precipitating and aggravating factors. (T. at 15, 16, 17.) In sum, the ALJ's finding that Plaintiff's allegations were partially credible is supported by substantial evidence, and therefore it is entitled to great deference. Thus affirmance is appropriate.

**WHEREFORE,** it is hereby

**ORDERED**, that the decision of the Commissioner be affirmed and the complaint (Dkt. No. 1) be dismissed.

Dated: July 2, 2007
       Syracuse, New York

George H. Lowe
United States Magistrate Judge